**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHARLES A. FRENCH,** | **)** | |
| **ID # 1503820** | **)** | |
| **Petitioner,** | **)** | |
| **vs.** | **)** | **No. 3:09-CV-2456-B (BH)** |
| | **)** | |
| **RICK THALER, Director,** | **)** | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | **)** | |
| **Justice, Correctional Institutions Division,** | **)** | |
| **Respondent.** | **)** | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b) and an Order of the Court, this case has been automatically referred for findings, conclusions, and recommendation.

## I. BACKGROUND

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual and Procedural History

On September 14, 2001, petitioner pled guilty to possession of a controlled substance, enhanced by prior felony convictions, in Cause No. F00-14144-LN in the 195th District Court of Dallas County, Texas. Pursuant to a plea agreement, he was sentenced to fifteen years' imprisonment. (Supplemental State Habeas Transcript[WR-68,972-04]:1).[1]

Petitioner did not file a direct appeal. He filed a state habeas application on November 7, 2007. (S.H.Tr.[WR-68,972-04]:2). On April 29, 2009, the Court of Criminal Appeals denied relief

[1] On that same date, petitioner also pled guilty to two other offenses, forgery, and unauthorized use of a motor vehicle, in cause numbers F98-47517-VN, and F00-14143-LN. However, petitioner's sentences in these two cases were completed and discharged in 2005, so petitioner does not contest these convictions in his petition. (Supp.S.H.Tr.[WR-68,972-04]:17).

without written order on the findings of the trial court. (Supp.S.H.Tr.[WR-68,972-04]:cover).

Petitioner mailed his petition for federal habeas relief on December 11, 2009. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9). Respondent filed a response on April 22, 2010, and provided the state court records. Petitioner filed a reply brief on June 18, 2010.

**B. <u>Substantive Issues</u>**

Petitioner raises two grounds for relief: 1) his guilty plea was involuntary because he was induced by the State's promise that his state and federal sentences would run concurrently, a promise it could not perform; and 2) his trial counsel provided ineffective assistance of counsel by erroneously advising him that the sentences would run concurrently.

Respondent contends that petitioner's second ground for relief is barred by the statute of limitations.

## II. STATUTE OF LIMITATIONS

**A. <u>Antiterrorism and Effective Death Penalty Act of 1996</u>**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action

in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner has not alleged any state-created impediment under subparagraph (B) that prevented him from filing his federal petition or any new constitutional right under subparagraph (C). The one-year statute of limitations is therefore calculated from the latest of (A) the date petitioner's conviction became final or (D) the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims.

Petitioner claims that the facts supporting his two claims did not become known to him until July 26, 2007, the date on which he stopped serving his state and federal sentences concurrently. Respondent does not appear to contest this as the proper date for calculating the statute of limitations for petitioner's first ground for relief, but he contends that petitioner knew or should have known the facts underlying his ineffective assistance of counsel claim when he pled guilty and was convicted. The facts underlying both of petitioner's grounds for relief are the same, however. He claims that his plea was involuntary, and that his attorney was ineffective in advising him to take the plea, because it was induced by the State's promise that he would serve his state and federal sentences concurrently. The one-year statute of limitations for both claims should therefore be calculated from July 26, 2007, when his sentences stopped running concurrently. Because petitioner filed his petition more than one year after this date, a literal application of § 2244(d)(1) renders his

December 11, 2009 filing[2] untimely.

**B. Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added). Petitioner filed a state writ application on November 7, 2007, which tolled the statute of limitations until April 29, 2009, when it was denied. Before the state writ was filed, 104 days of the one-year limitations period had elapsed. Petitioner therefore had 261 days remaining in the limitations period to file a federal petition after his state writ was denied. Because petitioner filed his federal petition 227 days later, his federal petition was timely filed.

## III. APPLICABLE STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits[3] in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v.*

---

[2] *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

[3] "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Here, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ.

*Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry,* 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. VOLUNTARINESS OF GUILTY PLEA

Petitioner first asserts that his guilty plea was involuntary because he was induced by a

promise from the State that could not be performed, i.e., that his state and federal sentences would run concurrently. He also claims that his trial attorney was ineffective because he advised petitioner that the sentences would run concurrently.

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). The Fourteenth Amendment Due Process Clause therefore imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full

understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Taylor*, 933 F.2d at 329. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

**A. State's Promise**

Petitioner was convicted on July 12, 2001, in Fort Worth Division of the Northern District of Texas of conspiracy to possess and conceal counterfeit obligations and sentenced to 60 months' imprisonment, to be followed by three years' supervised release. (Supp.S.H.Tr.[WR-68,972-04]: 8-12). On September 14, 2001, petitioner signed a plea agreement with the State stating that his sentence was to be fifteen years' confinement and that the sentence was to be "concurrent with other cases & with federal sentence–return to federal custody." (*Id.* at 6-7). Petitioner completed his five-year federal sentence and began his supervised release on March 24, 2006. (*Id.* at 18).

According to an affidavit at the state habeas level from Charley Valdez, with the Classified and Records Division of the TDCJ, petitioner received credit on his fifteen-year state sentence and was paroled *in abstentia* on October 1, 2003, while still in federal custody. Petitioner continued to receive credit towards his state sentence while on federal supervised release until his state parole was revoked on September 28, 2007, due to a new state conviction out of Tarrant County. (*Id*. at 17). At that point, petitioner lost all "street time" credit on his state sentence under Texas statute because he did not complete over half of his remaining sentence while on parole before revocation. *Id*.; *see* TEX. GOV'T CODE 508.283(c) (Vernon 2003).

Petitioner contends that his state plea agreement was based on a promise that could not be performed because his federal supervised release was revoked on July 26, 2007, and he was sentenced to a twenty-four-month term of imprisonment to be served consecutively to any term imposed by the state court. (Supp.S.H.Tr.[WR-68,972-04]:19-20). Since his state and federal sentences stopped running concurrently on July 26, 2007, the promise that induced him to plead guilty is no longer being performed and cannot be performed.

At the state habeas level, the trial court found that the State upheld its end of the plea agreement because petitioner received credit towards his state sentence for the time he spent in federal prison and on federal supervised release, and therefore the sentences ran concurrently as promised. (*Id*. at 4). The trial court further found that petitioner would have continued to receive credit towards his state sentence for the time he was on federal supervised release had he not committed a new offense, which resulted in his street time being forfeited under Texas law. (*Id.* at 4). Based on these findings, this ground was denied on its merits by the Court of Criminal Appeals. (*Id*. at cover). This denial is not an unreasonable application of, or contrary to, clearly established federal law.

The Fifth Circuit addressed a similar claim in *Montoya v. Johnson*, 226 F.3d 399 (5th Cir. 2000). Montoya also complained that his state plea bargain was involuntary and that his counsel was ineffective because his plea agreement with the state provided that his twelve-year state sentence would be imposed concurrently with his federal sentence. While Montoya had already pled guilty in federal court, he had not yet been sentenced in federal court when he was sentenced in state court. The federal court subsequently sentenced him to a seventy-eight months to be served *consecutively to* his state sentence. *Id*. at 401-02. Accordingly, Montoya's state and federal sentences could not be served concurrently as stated in the state plea agreement. *Id*. The state habeas court denied relief, but the federal district court granted relief, and the government appealed. The Fifth Circuit held that the state court's denial of habeas relief was not an unreasonable application of federal law because Montoya had failed to show that the plea agreement had been misrepresented to him and had therefore had failed to overcome the presumption due the state court's determination that Montoya's plea was a voluntary and knowing plea of guilty. *Id.* at 406-07. In particular, the Fifth Circuit concluded that the state did not breach its promise to Montoya because a state is not responsible for what might occur in federal criminal proceedings. The Fifth Circuit further concluded that the promise to Montoya was not an illusory one because Montoya would be transferred to federal custody if paroled, and his federal time would then be credited to his state sentence. *Id*. at 406. Finally, the Fifth Circuit noted that the state trial judge informed Montoya on the record that he could not bind the federal judge to do anything, but that under the agreement, Montoya would be given credit towards his state sentence for time spent in federal custody. Montoya indicated that he understood this, and he therefore was not misled into believing that the state plea would bind the federal court. *Id*. at 403, 406.

Petitioner contends that *Montoya* is distinguishable because he was not admonished on the

record that his state plea agreement did not bind the federal court; the record reflects that all three of his state cases would run concurrently, that he would be released back to federal custody, and that the state sentences would run concurrently with his federal sentence. (Supp.S.H.Tr.[WR-68,972-04]:33). In *Montoya*, the Fifth Circuit viewed the fact that Montoya was admonished on the record that the state court could not bind the federal judge as crucial because Montoya had not yet been sentenced in federal court. Indeed, as the Fifth Circuit noted in *Montoya*, in retrospect, Montoya would have been better served had he been sentenced in federal court *before* he was sentenced by the state court. *Montoya*, 226 F.3d at 401. Here, petitioner had already been sentenced in federal court before he was sentenced in his state cases. He was returned to federal custody, and as promised in the plea agreement, began serving his federal and state sentences concurrently up until his federal revocation six years later.

Petitioner further contends that his state plea agreement was involuntary and that the state habeas court's denial of relief was in error because at the time he pled guilty in state court, the federal judgment had already been entered stating that the federal sentence was to run consecutively to "any other state sentence the defendant is currently serving." (Supp.S.H.Tr.[WR-68,972-04]:9). He claims that the state and federal judgments were in conflict from the beginning. (Mem. at 6). At the time that the federal judgment was entered on July 12, 2001, however, petitioner had not yet pled guilty in the state court case. He was not already serving the state sentence when he was convicted in federal court.

Petitioner next contends that he is entitled to habeas relief because the Court of Criminal Appeals granted him habeas relief in another case after determining that his plea was involuntary. (Mem. at 11). In Cause No. 1018987D in Criminal District Court Number Two in Tarrant County, Texas, petitioner pled guilty and was sentenced pursuant to a plea agreement to six years of

imprisonment. It was this conviction that resulted in the revocation of both his state parole and his federal supervised release in 2007. (Supp.S.H.Tr.[WR-68,972-04]:19-20). In granting habeas relief and setting aside petitioner's conviction in that case, the Court of Criminal Appeals based its decision on factual findings made by the trial court that the subsequent federal judgment required that the federal sentence begin when the state sentence concluded and that petitioner pled guilty pursuant to an agreement that the sentences would run concurrently. Accordingly, the Court of Criminal Appeals determined that the plea agreement could not be followed. *Ex parte French*, No. AP-75,817 (Tex. Crim. App. Jan. 16, 2008). As noted earlier, however, petitioner's plea agreement was still being followed up until the time that his federal sentence was revoked based on the new state conviction. The fact that the state court granted relief in petitioner's case based on different facts is not dispositive in this case.

Finally, petitioner contends that the state court's decision denying habeas relief is in error because the state habeas court made an erroneous factual finding that petitioner is again receiving credit on both his state and federal sentences. ((Supp.S.H.Tr.[WR-68,972-04]:4-5). Petitioner contends that this finding is clearly erroneous because the federal judgment revoking his supervised release and sentencing him to twenty-four months states that this term was to be served consecutively to any term of imprisonment imposed by a state court. (*Id*. at 19-20). Although it appears that petitioner has presented clear and convincing evidence that this one factual finding is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, petitioner has not shown that the state court's decision denying relief was either an unreasonable application of federal law or that it was contrary to federal law. Under *Montoya*, should a federal court determine that a plea agreement contains either an illusory or breached promise and determine that a state court unreasonably found to the contrary, habeas relief would be

warranted. *Montoya*, 226 F.3d at 405-06. Here, the state did not breach its agreement with petitioner. He was promised that his sentences would run concurrently, and they did. As stated in *Montoya*, "a court sitting in habeas review should not. . . lightly find misrepresentation in a plea agreement." *Id*. at 406. This is because the advantages of the plea bargaining process are assured only if guilty pleas are "accorded a great measure of finality" and, therefore, representations by the parties at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Id*., *quoting Blackledge v. Allison*, 431 U.S. 63, 71, 74 (1977). Petitioner has failed to show that the plea agreement had been objectively misrepresented to him because the state court was not able to subsequently bind a federal court to again have petitioner's sentences run concurrently after revocation of his state parole and his federal supervised release. He has not shown that the state court's decision denying relief was an unreasonable application of federal law. Accordingly, petitioner's guilty plea was knowing and voluntary, and his first ground for relief is without merit.

**B. <u>Ineffective Assistance of Counsel</u>**

Petitioner also claims that his trial attorney was ineffective with respect to his guilty plea by advising him that his federal and state sentences would run concurrently.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render

a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[4] The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel." Id.

With respect to guilty pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different

---

[4] *Daniels* is not cited for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred. *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

absent the alleged errors. *Id.* at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

The state court denied this ground for relief on its merits. (Supp.S.H.Tr.[WR-68,972-04]:cover). Petitioner has not shown that this denial is contrary to federal law. He points to a letter he received from his attorney dated October 4, 2007, stating that all of his files from petitioner's case were destroyed after five years. He then states "[b]ut you are remembering correctly. Your sentences were to run concurrent." (Pet. Ex. G). This letter does not establish that petitioner's attorney rendered ineffective assistance of counsel with respect to petitioner's guilty plea. Petitioner's plea agreement states what counsel states in his letter–that the sentences were to run concurrently, and they did. As a result of his representation, petitioner was able to complete two state sentences while in federal custody and would have completed a third sentence but for a new conviction, which he is still serving. Counsel did not render ineffective assistance of counsel. Petitioner's second ground for relief is therefore also without merit and should be denied.

## V. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VI. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 12th day of July, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE